UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| S.N.B., a minor by her mother, <br> SHANNON S. JORDAN, <br> <br> Plaintiff, <br> <br> vs. <br> <br> CAROLYN W. COLVIN, Acting <br> Commissioner of the <br> Social Security Administration, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:14-cv-01371-SEB-DML <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Court AFFIRM the decision of the Commissioner of the Social Security Administration that S.N.B. is not disabled.

### Introduction

S.N.B., a minor ("Claimant"), by her mother Shannon S. Jordan, seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her October 2011 application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. The application for benefits alleged S.N.B. has been disabled since March 2008, at about six months old, due to asthma.

Acting for the Commissioner following a hearing held March 19, 2013, administrative law judge Albert J. Velasquez issued a decision on April 5, 2013, that S.N.B. is not disabled. The Appeals Council denied review of the ALJ's decision on June 17, 2014, rendering it the final decision of the Commissioner. The Claimant timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

S.N.B.'s mother earlier had filed an application for benefits for S.N.B. in May 2009, and after initial and reconsideration denials, a hearing was held before a different ALJ, William M. Manico. ALJ Manico issued a decision on March 4, 2011, that S.N.B. was not disabled. That decision was denied review by the Appeals Council and the Claimant filed an action for judicial review. On March 11, 2013, the denial of disability benefits was affirmed in a decision by Magistrate Judge Tim A. Baker of this court, reported at *S.N.B. ex rel. Jordon v. Astrue,* 2013 WL 936552 (S.D. Ind. March 11, 2013). Contrary to this procedural history, ALJ Velasquez stated in the decision under review in this case that the Claimant's disability application was before him on remand from the Appeals Council pursuant to a remand in the case decided by Judge Baker. The Commissioner states that ALJ Velasquez's misapprehension of the status of the case before him is "immaterial," and she makes no argument the prior decision has any preclusive effect. With this concession by the Commissioner, the court agrees that the prior decision has no preclusive effect, and the question of S.N.B.'s disability must be decided on the entire record before ALJ Velasquez.

The court now turns to the legal framework for analyzing child disability claims and the court's standard of review. It will then address the specific assertions of error made by the Claimant.

### Standard for Proving Disability

A child under the age of 18 is eligible for disability benefits under the SSI program if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA has implemented this statutory standard by, in part, prescribing a three-step sequential evaluation process. 20 C.F.R. § 416.924. Step one asks if the child is engaged in substantial gainful activity (*i.e.,* is earning money at a certain level); if she is, then she is not disabled. § 416.924(b). Step two asks whether the child's impairments, singly or in combination, are severe; if they are not, then she is not disabled. § 416.924(c). The third step is an analysis of whether the child's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Part B Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B. If they do and the duration requirement is satisfied, then the child is deemed disabled. §416.924(d).

The Part B Listing of Impairments is a compilation of medical conditions divided into fourteen major body systems that the SSA has adjudged are disabling in children. 20 C.F.R. § 416.925. In general, each listed condition is defined by two

sets of criteria: (1) diagnostic findings that substantiate the existence of a listed condition and (2) sets of related functional limitations that substantiate the condition's disabling severity. *Id.* A child's impairment or group of impairments can satisfy a listed condition in one of three ways: by meeting all the listed criteria, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, 20 C.F.R. § 416.926 (*i.e.,* the impairments do not match the listed criteria for a listed condition but they are of "equal medical significance" to those criteria or condition); or by functionally equaling the criteria, 20 C.F.R. § 416.926a(a).

Functional equivalence involves an analysis of six "domains" of functioning and determination of whether and the extent to which a child's impairments limit her functioning in those domains. The domains are:

- (1) acquiring and using information,
- (2) attending to and completing tasks,
- (3) interacting and relating with others,
- (4) moving about and manipulating objects,
- (5) caring for self, and
- (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If the child's impairments cause "marked" limitations in at least two domains, or cause "extreme" limitations in at least one domain, then her medical condition is functionally equivalent to a listing and she is disabled. 20 C.F.R. § 416.926a(d). In general, a "marked" limitation exists when a child's impairment(s) "interfere[] seriously with [her] ability to independently initiate,

4

sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that "very seriously" interferes with a child's ability to initiate, sustain, or complete activities within a domain. 20 C.F.R. § 416.926a(e)(3).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I. **The ALJ's Findings**

The Claimant was born in 2007, was three years old at the time her 2011 SSI application was filed, and was five and one-half years old at the time of the ALJ's decision. Both ages fit the "preschool" child rubric (applicable to children ages 3 to attainment of age 6) under SSA regulations used in evaluating a child's functioning for purposes of functional equivalence. *See* 20 C.F.R. § 416.92a(g)(2).

The ALJ found S.N.B. had severe impairments of asthma and obstructive sleep apnea. He evaluated the asthma impairment against the four subparts of child's listing 103.03 (asthma), and determined the listing was not met or medically equaled. With respect to sleep apnea, the ALJ noted there is no listing for this impairment, and because no medical opinion established the impairment equals a listing, he concluded the impairment did not meet or medically equal a listing. (R. 13).

The ALJ then turned to the six domains of functioning that must be analyzed to decide whether a child's impairments "functionally equal" a listing. Functional equivalence requires marked limitations in at least two domains or an extreme limitation in one domain. The ALJ determined S.N.B. has no limitations in (a) acquiring and using information, (b) attending and completing tasks, (c) interacting and relating with others, (d) moving about and manipulating objects, and (e) caring for self. He found less than marked limitations in (f) health and physical well-being.

Accordingly, the ALJ determined S.N.B. is not disabled.

## II. The Claimant's Assertions of Error

The Claimant contends the ALJ's decision is erroneous because the ALJ did not mention all evidence related to her asthma and did not obtain medical expert testimony at the hearing in deciding her impairments did not meet, medically equal, or functionally equal 103.03C2. She also specifically complains that the ALJ "arbitrarily rejected" the view of a pre-school teacher that S.N.B. was markedly limited in all six functional domains.

S.N.B.'s challenge is limited to the ALJ's evaluation of one of the subparts of the asthma listing—103.03C2.

### A. Though neither the ALJ nor the agency physicians addressed certain records, the ALJ's decision is supported by substantial evidence.

Listing 103.03 (asthma) has four subparts. The ALJ mentioned each subpart and found that the required severity was not demonstrated in the record. S.N.B. faults the ALJ's evaluation of subpart C2: Asthma with "C. Persistent low-grade wheezing between acute attacks or absence of extended symptom free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with . . . 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period."

The ALJ did not trace through medical records for evidence of "wheezing" or its persistence, and focused mainly on records documenting the Claimant's

7

spirometry testing as within normal limits. Spirometry testing[1] is directly relevant to a different subpart of 103.03—to 103.03A. The Claimant points to several records from 2010 and at least one from 2012, reporting treatment for asthma in general and the existence of wheezing that were not mentioned by the ALJ. The ALJ specifically mentioned "wheezes or crackles" only once, in noting that the Claimant's visit to her pulmonologist in January 2012, showed the absence of "wheezes or crackles." The ALJ did not address, however, a second visit to the pulmonologist later that year, in October 2012, in which "wheezing" and bronchial "coarse" breathing were documented. (R. 342). Because the ALJ did not discuss records that evidenced wheezing and to give S.N.B. the benefit of the doubt, the court assumes for purposes of its review of the Commissioner's decision that the medical evidence in the record is sufficient to meet or medically equal the requirement under paragraph C of evidence of "persistent low-grade wheezing." Still, subparagraph "2" of paragraph C is an essential element.

Subparagraph 2 requires evidence of "[s]hort courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period." S.N.B. contends that her medications satisfy this requirement, a contention met with strong and persuasive argument by the Commissioner to the contrary.

---

[1]  Spirometry testing is used to assess how well a person's lungs work by measuring how much air is inhaled, how much is exhaled, and how quickly the air is exhaled. *See http://www.mayoclinic.org/tests-procedures/spirometry/basics/definition/prc-20012673.*

The ALJ's decision reflects his consideration that the Claimant has been "prescribed and has taken appropriate medications" (mentioning Albuterol, Flonase, Pulmicort, and Flovent for asthma) and that the medications "have been relatively effective in controlling the claimant's symptoms." (R. 15). In addition, the ALJ gave "great weight" to the opinions of the agency physicians that the Claimant's asthma did not meet, medically equal, or functionally equal a listing. (R. 16).

The opinions were rendered in January 2012 and in April 2012. (*See* R. 287-292 and R. 293-298). The narrative findings listed by the agency physicians as underlying their opinions are materially identical between the January and April 2012 documents, and state the claimant's asthma is being treated by "meds that are working well," that she had one emergency room visit in September 2011, and had an examination in October 2011, in which her lungs were clear. (*See* R. 290-January 2012 findings; R. 296-April 2012 findings). Given their dates, the physicians' evaluations do not mention and could not have considered the Claimant's October 2012 visit to the pulmonologist in which a short-course (for 5 days) of an oral steroid was prescribed. (*See* R. 328-29). But—given their dates and the doctors' reviews of the medical records—the doctors were well aware of, and considered, the nature of the Claimant's medication treatment history for her asthma. They found, as noted, that the Claimant did not meet or medically equal a listing.

Even though the discussion in the ALJ's decision of evidence related to listing 101.03C2 is very brief and lacks discussion of the October 2012 visit to the

pulmonologist, the Commissioner urges the court to affirm the decision that 103.03C2 was not met or medically equaled because short courses of corticosteroids were prescribed at most only twice over an approximately 16 month period—once in June 2011 and once again in October 2012, well short of the requirement under 103.03C2 for "short courses" averaging more than 5 days per month for at least 3 months during a 12-month period.

The Commissioner also points out that when the denial of S.N.B.'s prior application for disability benefits was before this District Court for judicial review, Judge Baker rejected the same contention she makes here that her regularly-prescribed medications are the type described in the listing. The court is persuaded by Judge Baker's discussion in the prior case, and S.N.B. has not attempted to demonstrate how his analysis is wrong. In evaluating the "short courses" requirement of subparagraph C2, Judge Baker relied on a decision from the Western District of Wisconsin, which explained that:

> [T]he . . . use of the term 'short courses of corticosteroids' in Listing 103.03C2 . . . [does not refer] to long-term, daily use of a steroid inhaler. To conclude otherwise would lead to the absurd result that thousands of children with only mild asthma could be found disabled under the Social Security Act.

*S.N.B. ex rel. Jordan v. Astrue,* 2013 WL 936552 at *3 (quoting *Sanchez v. Barnhart,* 2005 WL 752220 at *9 (W.D. Wis. March 30, 2005), *aff'd,* 467 F.3d 1081 (7th Cir. 2006)). Judge Baker then found that S.N.B.'s use of Flovant, Flonase, Pulmicort, and Albuteral, are short-acting, inhaled medications that are not the type of corticosteroids prescribed for acute asthmatic attacks and described in the

listing. *Id.* As the Commissioner points out, the medical evidence here supports only two possible times when a short course of steroids was prescribed—potentially in June 2011 for an unknown number of days and in October 2012 for a prescribed period of five days—and those events occurred more than one year apart.

The court agrees with the Commissioner that given the contents of the administrative record, there is no error requiring remand. *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (administrative error can be harmless; court will not remand for further specification when convinced same result would be reached). Any possible error in this case because the ALJ did not mention the October 2012 treatment record and the fact that record was not reviewed by agency physicians is not cause for remand. The short-course treatments do not begin to satisfy the listing requirement. Further, the agency physicians were well aware of the Claimant's regularly prescribed steroidal medications, such as Flonase, Pulmicort, and Flovent, and concluded her asthma was not disabling as either meeting, medically equaling, or functionally equaling a listing. In short, S.N.B.'s regularly-prescribed medications were taken into account. S.N.B. has not met her burden of identifying evidence that satisfies the listing requirements.

### B. The ALJ was not required to obtain additional expert evidence.

S.N.B. has also failed to demonstrate the ALJ was required to obtain additional medical expert evidence in making his decision. As courts within this district have reminded the Claimant's counsel numerous times, an ALJ does not err in failing to consult a medical expert at the hearing unless there is sufficient

indication that new medical evidence not previously reviewed by agency physicians may "change the State agency medical . . . finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *See Graves v. Astrue,* Case No. 1:11-cv-249-SEB-DKL (S.D. Ind. 2012) (citing Social Security Ruling 96-6p)). The only new information S.N.B. points to are the October 2012 visit to the pulmonologist, which was addressed above, and a 2013 teacher's opinion, which is addressed below. Nothing indicates these two documents would possibly alter the physicians' earlier findings.

 The teacher opinion is a form document, on which S.N.B.'s pre-school teacher used check-marks to denote that S.N.B. is "marked" in her ability in each of the six domains of functioning evaluated by the SSA in child disability cases. The form does not explain anything about the six domains. It does not explain any of the available categories for describing ability level, including what "less than marked" means, or what "marked" means, or what "extreme" means. *See* R. 346. The ALJ found this opinion was not entitled to weight because of its inconsistency with medical evidence, with a prior report by S.N.B.'s teacher dated in January 2012, and with S.N.B.'s mother's descriptions of S.N.B.'s abilities. These were sufficient reasons for discounting the opinion, and they are well-supported.

 The ALJ otherwise explained the bases for his conclusions about S.N.B.'s functioning within the six domains. His conclusions are supported by relevant evidence, including the opinions of state agency doctors that S.N.B. did not functionally equal a listing.

12

The court finds the ALJ's decision about the weight to give the February 2013 teacher opinion is supported by substantial evidence. The court is also persuaded that expert medical testimony was unnecessary for evaluating the weight of this document. It is plainly conclusory and has no apparent underlying support.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: February 9, 2016

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system